596 July 15, 2026 No. 684

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of A. P.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

S. F.,
*Appellant.*

Clackamas County Circuit Court
24JU01576; A189689

Cody M. Weston, Judge.

Submitted May 21, 2026.

George W. Kelly filed the brief for appellant.

Dan Rayfield, Attorney General, Paul L. Smith, Solicitor General, and Erin K. Galli, Assistant Attorney General, filed the brief for respondent.

Before Tookey, Presiding Judge, Egan, Judge, and Jacquot, Judge.

PER CURIAM

Affirmed.

**PER CURIAM**

In this juvenile dependency case, mother appeals a judgment changing the permanency plan from reunification to adoption for her child A, who was one-and-a-half years old at the time of the permanency hearing. Mother assigns error to the juvenile court's determination that there was no compelling reason not to change the plan to adoption. Mother argues that a compelling reason did exist, specifically that mother was successfully participating in services that would make it possible for A to safely return to her care within a reasonable time. As explained below, we affirm.

Mother has not requested that we review *de novo*, and we do not exercise our discretion to engage in such review in this case.[1] We therefore review the juvenile court's factual findings for any evidence in the record to support them, and we review the "no compelling reason" legal conclusion for errors of law. *Dept. of Human Services v. S. J. M.*, 364 Or 37, 56-57, 430 P3d 1021 (2018).

In considering a proposed change to a child's permanency plan, the juvenile court is to "carefully evaluate" the request and seek to make a decision "that is most likely to lead to a positive outcome for the child." *State ex rel DHS v. M. A. (A139693)*, 227 Or App 172, 183, 205 P3d 36 (2009). To that end, ORS 419B.476(5), which governs permanency hearings and judgments, requires the court to address certain issues in the judgment changing a child's permanency plan. As relevant here, when a child's plan is being changed to adoption, ORS 419B.476(5)(d) requires the court to address whether any of the circumstances in ORS 419B.498(2) apply.

ORS 419B.498(2) lists reasons that the Oregon Department of Human Services (ODHS) may forego or delay filing a petition to terminate parental rights in a dependency case, one of which is the existence of a "compelling reason, which is documented in the case plan, for determining that

---

[1] *See* ORS 19.415(3)(b) ("Upon an appeal in an equitable action or proceeding other than an appeal from a judgment in a proceeding for the termination of parental rights, the Court of Appeals, acting in its sole discretion, may try the cause anew upon the record or make one or more factual findings anew upon the record."); ORAP 5.40(8)(c) (providing for the exercise of that discretion only in "exceptional cases"); ORAP 5.40(8)(d) (identifying nonexclusive considerations that may be relevant to our decision whether to exercise *de novo* review).

filing such a petition would not be in the best interests of the child or ward." The statute provides some examples of compelling reasons, one of which is that "[t]he parent is successfully participating in services that will make it possible for the child or ward to safely return home within a reasonable time as provided in ORS 419B.476." ORS 419B.498(2)(b)(A). "'Reasonable time' means a period of time that is reasonable given a child or ward's emotional and developmental needs and ability to form and maintain lasting attachments." ORS 419A.004(27). The party arguing that a compelling reason exists bears the burden to prove it. *S. J. M.*, 364 Or at 53.

We conclude that the juvenile court did not err in deciding on this record that mother had not proved a compelling reason not to change A's permanency plan to adoption. There is evidence in the record that, although ODHS offered mother visitation with A and referrals for services throughout the dependency case, mother did not engage in visits with A until five months before the permanency hearing and then did so inconsistently until two months before the permanency hearing, and she did not begin participating in services until two months before the permanency hearing. There is also evidence in the record that A did not recognize mother as his parent and that he needed a stable, consistent, and nurturing caregiver. Although the juvenile court acknowledged mother's recent engagement in services and recognized that she had begun making some progress in those services, the court determined that it was "too little, too late."

Given the record before the juvenile court at the permanency hearing, the court did not err in ruling that mother had not proved that she was successfully participating in services that would make it possible for A to return to her care within a reasonable time. We therefore affirm.

Affirmed.